UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FRANCINETTE BAPTISTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-0900 |
| | § | |
| CAPITAL ONE BANK (USA), N.A. dba | § | With Jury Demand Endorsed |
| CAPITAL ONE and CREDITWISE, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Francinette Baptiste ("Plaintiff"), through counsel, for her Complaint against Defendant Capital One Bank (USA), N.A. dba Capital One and CreditWise ("Capital One," "CreditWise" or "Defendant"), states:

### I. INTRODUCTION

1.     Defendant engaged in willful, malicious, coercive, deceptive and harassing actions against Plaintiff to further Defendant's efforts to illegally collect from Plaintiff, *in personam*, a debt included in her bankruptcy while Plaintiff was protected by either the automatic stay or discharge injunction.  Defendant's actions include:  1) sending Plaintiff a regular, relentless stream of emails, some under the guise of its credit monitoring service called CreditWise, and others directly from Capital One seeking Plaintiff to log into her credit card account or update her contact information to ensure she receives important account information related to the discharged credit card account, like reminders that her monthly statement is available; 2) repeatedly illegally and impermissibly accessing Plaintiff's confidential credit files, through an alleged CreditWise contract, after her discharge when it fully knew the debt was uncollectible, such actions being an ongoing intrusion of Plaintiff's common law right to solitude, seclusion and private affairs; and 3)

misrepresenting information to TransUnion that Plaintiff had granted it permission to access her credit files to impermissibly obtain and use Plaintiff's confidential, personal information contained in her consumer report.

2.       Plaintiff, however, denies she contracted with Capital One for its CreditWise program since it was *free* and not offered as anything but a bonus for being a Capital One credit card holder.  She never even knew a contract had been offered to her and was never informed of the terms and conditions of the offer.  Had she known she was being offered such a contract, that was simply a clever device to circumvent the automatic stay, discharge injunction, and the Fair Credit Reporting Act, so Capital One could continue to contact and harass her notwithstanding her bankruptcy and attempt to collect the discharged debt, she would have soundly rejected such offer. Plaintiff alleges this conduct is part of Defendant's policies, procedures, practices and malicious and illegal design to profit by collecting on debts included and discharged in bankruptcy by taking advantage of unsophisticated debtors, like Plaintiff.

3.       When Defendant closed Plaintiff's credit card account, she believed the CreditWise program was also terminated and removed the CreditWise app from her phone.  She had no idea Defendant was continuing to pull her credit reports.  Even after September 14, 2021, after Plaintiff's counsel first contacted Capital One's attorneys and advised them Plaintiff did not want nor had she ever wanted Defendant's CreditWise emails nor did she want it pulling her credit reports, the emails continued.

4.       Plaintiff claims Defendant violated: 1) Tex. Fin. Code § 392.001 *et seq.*, known as the Texas Debt Collection Act ("TDCA"); 2) the common law prohibiting intrusions on seclusion, solitude and private affairs; 3) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 et seq., (known as the Fair Credit Reporting Act, "FCRA"); and 4) the automatic stay and discharge injunction of

the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Plaintiff seeks to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

5.      Plaintiff is a natural person residing in Collin County, Texas and a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and the TDCA, Tex. Fin. Code § 392.001(1).

6.      Defendant is a national bank that may be served by delivering a summons to its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

7.      Defendant is a "person" and "user" of consumer credit and other financial information, as the terms are defined under the FCRA, 15 U.S.C. § 1681a(b), and a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7).

8.      The debt at issue Defendant was attempting to collect from Plaintiff was a "consumer debt," as defined by the TDCA, Tex. Fin. Code § 392.001(2).

9.      Defendant is a furnisher of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively, the "Credit Reporting Agencies" or "CRAs").

## III. JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1334, and 1367, and 15 U.S.C. § 1681p.

11.      Venue is proper in this district because Defendant transacts business in this district, Plaintiff filed her bankruptcy case in this district, and the conduct complained of occurred in this district.

## IV. FACTUAL ALLEGATIONS

**A.    The Subject Debt Was Included in Plaintiff's Bankruptcy Case and Plaintiff was Protected from Defendant's Collection Efforts by the Automatic Stay and Discharge Injunction.**

12.    On November 14, 2019, Plaintiff filed a Chapter 7 bankruptcy in case number 19-43101 ("Bankruptcy Case") in the Eastern District of Texas Bankruptcy Court, Sherman Division ("Bankruptcy Court"), and listed a Capital One credit card with an account number ending in 6429 on Schedule E/F (the "Account").  Plaintiff also had two bank accounts with Capital One which were closed in December of 2020.

13.    A true and correct copy of relevant portions of Plaintiff's Schedule E/F is attached as Exhibit "1."

14.    On November 17, 2019, the Bankruptcy Noticing Center for the Bankruptcy Court sent a true and correct copy of the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice"), by electronic transmission to Capital One.  The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362.  The electronic service provider did not return the 341 Notice sent to Capital One, creating a presumption it was received.

15.    On February 26, 2020, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order").  The Discharge Order followed Official Form 318, including the explanatory language contained therein.  The Discharge Order discharged Plaintiff from any liability for the debt created by the Account.  Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the

debt personally.  Creditors who violate this order can be required to pay debtors damages and attorney's fees."

16.     On February 28, 2020, the Bankruptcy Noticing Center sent a true and correct copy of the Discharge Order to Defendant by electronic transmission.  This transmission constituted notice to Defendant of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

17.     A true and correct redacted copy of the Discharge Order is attached as Exhibit "2."

18.     Never during the pendency of Plaintiff's Bankruptcy Case did Capital One or any other person or entity object to or dispute the details or completeness of the Account on Schedule E/F of Plaintiff's Petition.

19.     Never did Plaintiff reaffirm the Account with any person or entity.

20.     Never did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

**B.     During Plaintiff's Bankruptcy Case and After the Debt was Discharged, Defendant Made Harassing Contacts with Plaintiff and Attempted to Collect the Debt from Her.**

21.     While Plaintiff's Bankruptcy Case was pending and after the debt had been discharged, Defendant contacted Plaintiff about the Account to coerce or deceive her into making payments by sending Plaintiff a relentless stream of email notices and illegally accessing her credit reports.

22.     Defendant engaged Plaintiff in a relentless email campaign pressuring her to make weekly contact and log in to the Account online, and to update her email so that Capital One could keep contacting her to alert her of her monthly billing statements and payments due, to give her suggestions for improving her credit score, like paying her bills on time, to offer her new products and services, and to entice her into applying for new credit with Capital One.  The only purpose

-5-

of such engagement would be to allow Capital One to collect the discharged debt or hook Plaintiff

back into a new credit card or other line of credit at a higher interest rate where it would be able to

recoup the losses it suffered when she filed bankruptcy.  These emails continue to present day,

nearly two years after the bankruptcy was filed and nearly twenty months after the underlying debt

was discharged.

23.     Defendant typically sent nine different types of emails to Plaintiff:  1) requesting

contact from Plaintiff related to the discharged credit card account (herein called a "Type 1

Email"), 2) informing Plaintiff of changes to her TransUnion credit report (herein called a "Type

2 Email"), 3) informing Plaintiff of changes to her Experian credit report (herein called a "Type 3

Email"), 4) notifying Plaintiff of alerts on her credit reports (herein called a "Type 4 Email"), 5)

giving Plaintiff credit management tips (herein called a "Type 5 Email"), 6) advising Plaintiff of

changes to her credit score (herein called a "Type 6 Email"), 7) announcing new features or

programs (herein called a "Type 7 Email"), 8) advising Plaintiff of important updates (herein called

a "Type 8 Email"), and 9) enticing and encouraging Plaintiff to apply for new credit with offers of

the possibility of pre-approved Capital One cards (herein called a "Type 9 Email").

**1)      Capital One Sent a Series of Email Notices Urging Plaintiff to Make Contact Regarding Her Discharged Credit Card Account Notwithstanding the Discharge Injunction.**

24.     After Plaintiff received a discharge of the Account, Capital One sent Plaintiff one

or more Type 1 and Type 9 Emails urging Plaintiff, *inter alia*, to log into her credit card account,

provide updated contact information to allow Capital One to send her information related to the

Account, and to verify her email address so they could let her know when her monthly billing

statements were available, and requesting she apply for new credit with offers of the possibility of

pre-approved Capital One credit cards.  These emails requesting contact could only be for the

illegal purpose of trying to collect the discharged debt from Plaintiff, *in personam*.

25.     For example, after the discharge, on January 20, 2021, Capital One Sent Plaintiff a Type 9 Email stating, "You're invited, Francinette!  See if you're pre-approved with no impact to your score…  To thank you for being a loyal Capital One customer, we invite you to see if you're pre-approved for one of our credit cards."  The email contained "Continue" links to a Capital One website where she could enter her personal information to "..see if you're pre-approved before you apply," and directed her to "Download the mobile app."   Under the heading "Important Information from Capital One," it instructed, to ensure delivery of further contact from Capital One, that she add capitalone@message.capitalone.com to her address book, that she visit www.capitalone.com/support-center/contact-us to contact them, and advised "You received this email as a valued Capital One customer," and that "Products and services are offered by Capital One, N.A., and Capital One Bank (USA), N.A., Members FDIC."  Additionally, Plaintiff was warned that "Capital One does not provide, endorse or guarantee any third-party product, service, information or recommendation listed above," and that "[t]he third parties listed are not affiliated with Capital One and are solely responsible for their products and services;" however, it is unclear as to what third-party Defendant was referring to in the email.

26.     A true and correct copy of the January 20, 2021 email is attached as Exhibit "3."

27.     On April 8, 2021, Defendant sent Plaintiff a Type 1 Email demanding contact and stating, "Take Action: Francinette Baptiste, please confirm your email address," and "Stay Informed, Stay Secure… You haven't opened an email from us lately, so we're checking in to make sure your contact information is up-to-date."  "Confirm My Email" and "Update My Info" buttons were included directing Plaintiff to the Capital One website.  The email further advised, "As a Capital One customer, you receive important account information by email, like *reminders that your monthly statement is available* online or alerts about potential fraud" and requested, "If there's a better email address for receiving account updates, please sign in to your account to

change your email address or set your alert preferences."  The message concluded with: "Thanks for being a Capital One customer" and directed her to "Download the mobile app."  Under the heading "Important Information from Capital One," it instructed, to ensure delivery of further contact from Capital One, that she add capitalone@notification.capitalone.com to her address book, that she visit www.capitalone.com/support-center/contact-us to contact them, and advised "This email … contains information directly related to your account with us…" and that "Products and services are offered by Capital One, N.A., and Capital One Bank (USA), N.A., Members FDIC."

28.    A true and correct copy of the April 8, 2021 email is attached as Exhibit "4."

29.    On May 26, 2021, Capital One sent Plaintiff another similar Type 1 Email seeking contact.

30.    A true and correct copy of the May 26, 2021 email is attached as Exhibit "5."

31.    On July 21, 2021, Capital One sent Plaintiff another similar Type 1 Email seeking contact.

32.    A true and correct copy of the July 21, 2021 email is attached as Exhibit "6."

33.    On September 23, 2021, Capital One sent Plaintiff a Type 9 Email offering a potential pre-approved credit card.

34.    A true and correct copy of the September 23, 2021 email is attached as Exhibit "7."

35.    Plaintiff is informed and believes, and upon such information and belief, that Capital One's internal policies and procedures dictate that emails regarding the discharged debts be sent to debtors when certain conditions are met.  Plaintiff is informed and believes, and upon such information and belief, that Defendant has set up a process to deliberately seek contact with debtors on discharged accounts to pressure them into paying the discharged debt with the pressure increasing over time.

      **2)**      **Capital One Sent a Continuous Stream of Unsolicited Email Notices Through Its CreditWise Program.**

36.     During the bankruptcy and after the discharge, Capital One sent Plaintiff a constant stream of emails alerting her to changes in her credit score and credit reports, among other things, to lure her into the Capital One CreditWise program.  If Plaintiff responded to an email, Capital One made the incorrect assumption that Plaintiff was enrolling or re-enrolling in CreditWise. There was no intent by Plaintiff to contract with Defendant.

37.     The CreditWise emails initially advised Plaintiff that her credit score had gone down drastically, but did not mention this is normal since she had just filed bankruptcy.  Nor did the emails disclose that Capital One had a conflict of interest in doing credit monitoring since it was a creditor in Plaintiff's bankruptcy.  Since this bad news was coming from Capital One, a creditor, Plaintiff wondered if Capital One was threatening her and perhaps she should contact Capital One to see how the damage to her credit could be mitigated.  These emails are designed to and, in fact, did scare Plaintiff and make her question her decision to file bankruptcy.  Most of the emails were cryptic and asked Plaintiff to check in weekly to see if there were any new changes in her credit score or to sign in soon to see the changes to her credit reports.  Such an email campaign put continuing and increasing pressure on Plaintiff to contact Capital One to see what she could do to keep her credit score from continuing to fall.  Of course, one of the frequent recommendations from CreditWise was to "pay your bills on time."  Defendant sent voluminous emails, many of which Plaintiff does not have copies, but detailed information of the emails she does have are set out below.

38.     For example, during Plaintiff's bankruptcy and while the automatic stay was in effect, on November 17, 2019, Capital One CreditWise sent Plaintiff a Type 2 Email stating, "Francinette, there's been a change to your TransUnion credit report," "Heads up:  There was some activity on your TransUnion credit report," and to "Visit the Alerts section of CreditWise® from

Capital One®" to review the details.  The email further advised Plaintiff to "Sign in soon--staying on top of your credit can help you defend yourself against potential fraud or identity theft" and provided links for her to "Sign in to CreditWise" and "Download the CreditWise mobile app." Under the heading "Important Information from Capital One," Defendant instructed, to ensure delivery of further contact from Capital One, that she add capitalone@notification.capitalone.com to her address book and advised, "We believe CreditWise alerts are critical to staying on top of your credit," "By clicking on the links above, you may be taken to a third-party site that is not owned by Capital One," and "Products and services are offered by Capital One Bank (USA), N.A., Member FDIC."

39.    A true and correct copy of the November 17, 2019 email is attached hereto as Exhibit "8."

40.    On November 18, 2019, CapitalOne CreditWise sent Plaintiff a Type 4 Email stating, "Francinette, you have new alerts on CreditWise," and requesting she "Visit the Alerts section of CreditWise® from Capital One®" to review the details.  Defendant warns Plaintiff that "Alert types can include: changes to your credit report, changes in names and addresses that are associated with your Social Security Number (SSN), or when your SSN or email address is found on the dark web, which could also include findings of other personal information linked to your SSN or email address."  The email further advised Plaintiff to "Sign in soon--staying on top of your credit can help you defend yourself against potential fraud or identity theft" and provided links for her to "Sign in to CreditWise" and "Download the CreditWise mobile app."  Under the heading "Important Information from Capital One," Defendant instructed, to ensure delivery of further contact from Capital One, that she add capitalone@notification.capitalone.com to her address book and advised, "We believe CreditWise alerts are critical to staying on top of your credit," "By clicking on the links above, you may be taken to a third-party site that is not owned

by Capital One," and "Products and services are offered by Capital One Bank (USA), N.A., Member FDIC."

41.    A true and correct copy of the November 18, 2019 email is attached as Exhibit "9."

42.    On November 22, 2019, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change in her TransUnion credit report.

43.    A true and correct copy of the November 22, 2019 email is attached as Exhibit "10."

44.    On December 3, 2019, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change in her TransUnion credit report.

45.    A true and correct copy of the December 3, 2019 email is attached as Exhibit "11."

46.    On December 5, 2019, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change in her TransUnion credit report.

47.    A true and correct copy of the December 5, 2019 email is attached as Exhibit "12."

48.    On December 7, 2019, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change in her TransUnion credit report.

49.    A true and correct copy of the December 7, 2019 email is attached as Exhibit "13."

50.    On December 14, 2019, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change in her TransUnion credit report.

51.    A true and correct copy of the December 14, 2019 email is attached as Exhibit "14."

52.    On January 9, 2020, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change in her TransUnion credit report.

53.    A true and correct copy of the January 9, 2020 email is attached as Exhibit "15."

54.    On January 11, 2020, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change in her TransUnion credit report.

55.    A true and correct copy of the January 11, 2020 email is attached as Exhibit "16."

56.    On February 26, 2020, CapitalOne CreditWise sent Plaintiff a Type 6 Email stating, "Hi Francinette, your score went up … Your credit score improved --keep it up!" and "Here's a quick look at your credit score activity from January 24, 2020, to February 21, 2020, that was monitored by CreditWise® from Capital One®."  It further advised Plaintiff that her score increased one point and that "CreditWise monitors your … credit score and factors that can affect it--like on-time payments, available credit and new accounts," and directs her to "Sign in weekly to check your credit score and to get personalized suggestions for improving your credit health." A "Sign in to CreditWise" link was included directing Plaintiff to the Capital One CreditWise website.  Under the heading "Important Information from Capital One," Defendant instructed, to ensure delivery of further contact from Capital One, that she add capitalone@message.capitalone.com to her address book and that she visit www.capitalone.com/support-center/contact-us to contact them and advised, "We believe CreditWise alerts are critical to staying on top of your credit," "The availability of the CreditWise tool depends on our ability to obtain your credit history from TransUnion.  Alerts are based on changes to your TransUnion and Experian® credit reports and information we find on the dark web," and "Products and services are offered by Capital One Bank (USA), N.A., and Capital One, N.A., Members FDIC."

57.    A true and correct copy of the February 26, 2020 email is attached as Exhibit "17."

58.    On March 1, 2020, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change in her TransUnion credit report.

59.    A true and correct copy of the March 1, 2020 email is attached as Exhibit "18."

60.    On May 28, 2020, Capital One CreditWise sent Plaintiff a Type 5 Email stating, "Work to maintain your credit score with CreditWise from Capital One," "Top 10 FAQs regarding

COVID-19 and your credit score." The email provided links to FAQs: "What types of action could negatively impact my credit score?" and "What should I do if I can't pay my credit card bills?" and "Find Answers. See FAQs…" It advised Plaintiff, "We're here to partner with you as you navigate this unique time we're living in. That's why we give you tools, like the CreditWise Simulator, to monitor your credit score. Plus, using CreditWise will never hurt your score. You can take control during this time and work to maintain your credit score. And CreditWise tools will help you every step of the way. Sign in weekly to keep an eye on your score!" Under the heading "Important Information from Capital One," Defendant instructed, to ensure delivery of further contact from Capital One, that she add capitalone@message.capitalone.com to her address book and that she visit www.capitalone.com/support-center/contact-us to contact them, and advised, "The availability of the CreditWise tool depends on our ability to obtain your credit history from TransUnion. Alerts are based on changes to your TransUnion and Experian® credit reports and information we find on the dark web," and "Products and services are offered by Capital One Bank (USA), N.A., and Capital One, N.A., Members FDIC."

61.    A true and correct copy of the May 28, 2020 email is attached as Exhibit "19."

62.    On June 18, 2020, Capital One CreditWise sent Plaintiff a Type 8 Email stating, "Important update from CreditWise from Capital One … Updated Terms & Conditions." It then stated, "You'll have to open at least one email per year to continue receiving alerts via email. If you don't get our emails for any reason, you can always sign in to CreditWise to view your alerts." The email further instructed Plaintiff to "Sign in to review the complete updated Terms and Conditions. While you're at it, check your credit score." and provided links to "Sign in to CreditWise" and "View full Terms and Conditions." Under the heading "Important Information from Capital One," Defendant instructed, to ensure delivery of further contact from Capital One, that she add capitalone@notification.capitalone.com to her address book and that she visit

www.capitalone.com/support-center/contact-us to contact them, and advised, "The availability of the CreditWise tool depends on our ability to obtain your credit history from TransUnion," and "Products and services are offered by Capital One Bank (USA), N.A., and Capital One, N.A., Members FDIC."

63.    A true and correct copy of the June 18, 2020 email is attached as Exhibit "20."

64.    On July 3, 2020, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of a change in her credit score.

65.    A true and correct copy of the July 3, 2020 email is attached as Exhibit "21."

66.    On July 5, 2020, Capital One CreditWise sent Plaintiff a Type 3 Email stating, "Francinette, there's been a change to your Experian credit report," and to "Visit the Alerts section of CreditWise® from Capital One®" to review the details.  The email further advises Plaintiff to "Sign in soon--staying on top of your credit can help you defend yourself against potential fraud or identity theft" and provided links for her to "Sign in to CreditWise" and "Download the CreditWise mobile app."  Under the heading "Important Information from Capital One," Defendant instructed, to ensure delivery of further contact from Capital One, that she add capitalone@notification.capitalone.com to her address book and advised, "We believe CreditWise alerts are critical to staying on top of your credit," "By clicking on the links above, you may be taken to a third-party site that is not owned by Capital One," and "Products and services are offered by Capital One Bank (USA), N.A., Member FDIC."

67.    A true and correct copy of the July 5, 2020 email is attached as Exhibit "22."

68.    On July 24, 2020, Capital One CreditWise sent Plaintiff a Type 4 email advising Plaintiff that she had new alerts that she should review.

69.    A true and correct copy of the second July 24, 2020 email is attached as Exhibit "23."

70.     On August 12, 2020, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of a change in her credit score.

71.     A true and correct copy of the August 12, 2020 email is attached as Exhibit "24."

72.     On October 7, 2020, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of a change in her credit score.

73.     A true and correct copy of the October 7, 2020 email is attached as Exhibit "25."

74.     On November 4, 2020, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of a change in her credit score.

75.     A true and correct copy of the November 4, 2020 email is attached as Exhibit "26."

76.     On December 7, 2020, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of no change in her credit score.

77.     A true and correct copy of the December 7, 2020 email is attached as Exhibit "27."

78.     On January 4, 2021, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of no change in her credit score.

79.     A true and correct copy of the January 4, 2021 email is attached as Exhibit "28."

80.     February 1, 2021, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of a change in her credit score.

81.     A true and correct copy of the February 1, 2021 email is attached as Exhibit "29."

82.     On March 5, 2021, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of no change in her credit score.

83.     A true and correct copy of the March 5, 2021 email is attached as Exhibit "30."

84.     On April 2, 2021, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of no change in her credit score.

85.     A true and correct copy of the April 2, 2021 email is attached as Exhibit "31."

86.     On April 30, 2021, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of a change in her credit score.

87.     A true and correct copy of the April 30, 2021 email is attached as Exhibit "32."

88.     On May 27, 2021, Capital One CreditWise sent Plaintiff a Type 3 Email advising her of a change to her Experian credit report.

89.     A true and correct copy of the May 27, 2021 email is attached as Exhibit "33."

90.     On May 28, 2021, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of a change in her credit score.

91.     A true and correct copy of the May 28, 2021 email is attached as Exhibit "34."

92.     On June 7, 2021, Capital One CreditWise sent Plaintiff a Type 7 Email stating, "[New Feature] See if you have offers waiting," and "Use the new *For You* feature in CreditWise from Capital One to see any offers and credit tips hand-picked for you."  The email further advised Plaintiff that she "may be eligible to apply for new products like credit cards and auto financing," that Defendant "made it easy to find out with our new For Your feature," and that it will "keep tabs on offers that may be available," "offers could be for credit cards, auto financing or to refinance an existing loan, and that the "Offers are hand-picked for you, because they may be a good fit."  The email instructed Plaintiff to "Take a second to visit For You today and check back frequently for the latest articles, tips and videos" and provided two separate links to "Check for Offers."  Under the heading "Important Information from Capital One," Defendant instructed, to ensure delivery of further contact from Capital One, that she add capitalone@message.capitalone.com to her address book and that she visit www.capitalone.com/support-center/contact-us to contact them and advised, "The availability of the CreditWise tool depends on our ability to obtain your credit history from TransUnion.  Alerts are based on changes to your TransUnion and Experian® credit reports and information we find

on the dark web," and "Products and services are offered by Capital One Bank (USA), N.A., and Capital One, N.A., Members FDIC."

93.     A true and correct copy of the June 7, 2021 email is attached as Exhibit "35."

94.     On July 16, 2021, Capital One CreditWise sent Plaintiff a Type 2 Email advising Plaintiff of changes to her TransUnion credit report.

95.     A true and correct copy of the July 16, 2021 email is attached as Exhibit "36."

96.     On August 6, 2021, Capital One CreditWise sent Plaintiff a Type 3 Email advising her of a change to her Experian credit report.

97.     A true and correct copy of the August 6, 2021 email is attached as Exhibit "37."

98.     On August 7, 2021, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change to her TransUnion credit report.

99.     A true and correct copy of the August 7, 2021 email is attached as Exhibit "38."

100.     August 9, 2021, Capital One CreditWise sent Plaintiff a Type 3 Email advising her of a change to her Experian credit report.

101.     A true and correct copy of the August 9, 2021 email is attached as Exhibit "39."

102.     On August 22, 2021, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change to her TransUnion credit report.

103.     A true and correct copy of the August 22, 2021 email is attached as Exhibit "40."

104.     On September 1, 2021, Capital One CreditWise sent Plaintiff a Type 6 Email advising Plaintiff of a change in her credit score.

105.     A true and correct copy of the September 1, 2021 email is attached as Exhibit "41."

106.     On September 5, 2021, Capital One CreditWise sent Plaintiff a Type 2 Email advising her of a change to her TransUnion credit report.

107.     A true and correct copy of the September 5, 2021 email is attached as Exhibit "42."

108.    On September 5, 2021, Capital One CreditWise sent Plaintiff a Type 3 Email advising her of a change to her Experian credit report.

109.    A true and correct copy of the September 5, 2021 email is attached as Exhibit "43."

110.    Plaintiff is informed and believes, and upon such information and belief, that Capital One's internal policies and procedures dictate that the CreditWise emails to debtors in bankruptcy be sent during the bankruptcy to encourage the debtors to stay in the CreditWise program and ratify their enrollment by responding to the emails.  If the debtor had never participated in CreditWise, simply by clicking on any of the numerous buttons in the emails, they would automatically be enrolled in CreditWise post-discharge.  Plaintiff is informed and believes, and upon such information and belief, that Defendant has set up a process to deliberately lure debtors into the CreditWise program so Defendant can continue to have access to the debtor's credit reports to help Defendant in getting payments on the discharged debt, monitor the debtor's financial stability for future credit offers, or for other purposes that financially benefit Defendant.

111.    Plaintiff believes that, after reasonable discovery, she can show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, under its established policies and procedures, regarding knowingly, willfully, intentionally, and maliciously attempting to collect on debts included in bankruptcy or to circumvent the protections provided to consumers in the FCRA.

**3)    After the Account Had Been Discharged, Capital One Engaged in Prohibited, Harassing and Deceptive Collection Actions Against Plaintiff by Illegally Accessing her Credit Reports.**

112.    Despite the change in the legal status of the Account upon Plaintiff's bankruptcy discharge making the debt legally uncollectible, Defendant, on at least twenty-seven (27) occasions, illegally and impermissibly accessed Plaintiff's protected TransUnion credit file containing her confidential, personal and financial information and obtained and used these

consumer reports to further its *in personam* collection attempts against Plaintiff on the discharged debt.

113.    To obtain and use Plaintiff's consumer reports, Capital One misrepresented information to TransUnion that Plaintiff had granted it permission to access the credit reports, representing to TransUnion that it had a legally permissible purpose to conduct account reviews and access Plaintiff's credit file and obtain her consumer reports.  Capital One's purported permissible purpose, however, was false because Plaintiff had not requested new credit from Defendant or given permission for her credit reports to be accessed by Defendant.  If Defendant alleges Plaintiff gave permission through its CreditWise program, Plaintiff denies entering into such contract, or alternatively, that such contract had been expressly terminated at or near the time she filed for bankruptcy relief.  Once the debt had been discharged and the CreditWise contract terminated, Defendant no longer had the right to access Plaintiff's credit reports.

114.    Despite the Account being discharged in Plaintiff's Bankruptcy, Capital One via CreditWise, without Plaintiff's permission, performed illegal account review inquiries with TransUnion.

115.    For example, on March 26, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

116.    On April 23, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

117.    On May 25, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

118.    On June 6, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

119.    On June 28, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

120.    On July 18, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

121.    On August 9, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

122.    On August 26, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

123.    On September 6, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

124.    On October 1, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

125.    On October 16, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

126.    On October 30, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

127.    On November 16, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

128.    On December 5, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

129.    On December 16, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

130.    On December 25, 2020, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

131.     On January 22, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

132.     On February 10, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

133.     On March 1, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

134.     On March 28, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

135.     On April 26, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

136.     On May 25, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

137.     On July 1, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

138.     On July 16, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

139.     On July 31, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

140.     On August 29, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

141.     On September 4, 2021, Defendant via CreditWise pulled Plaintiff's TransUnion credit report without a lawful purpose.

142.    True and correct redacted copies of relevant excerpts from Plaintiff's TransUnion credit reports generated on August 4, 2021 and November 1, 2021 showing Defendant's credit pulls are attached hereto as Exhibits "44" and "45," respectively.

    **4)**    **Plaintiff Sent Defendant a Demand Requesting Defendant Cease Its Relentless Emails and Illegal Pulls of Her Credit, But Defendant Continued Its Harassing Collection Activities.**

143.    On or about September 14, 2021, Plaintiff notified Defendant that Plaintiff did not want to be in the CreditWise program and to cease-and-desist pulling her credit reports and sending her emails.  Despite Plaintiff's demand that the emails and credit pulls cease, Defendant continued to send emails related to the discharged Capital One credit card account.

144.    For example, on September 23, 2021, Capital One sent Plaintiff a Type 9 Email offering a potential pre-approved credit card.  *See* Exhibit "7."

**C.**    **Plaintiff Denies She Entered Into a Capital One CreditWise Contract That Authorized Capital One to Pull Her Credit Reports Post-Discharge, But if She Did, it Was By Unilateral Mistake or, in the Alternative, Such Contract is Illegal or Unconscionable and is Void and Unenforceable.**

145.    Plaintiff denies there was ever a separate CreditWise contract.  The only contract between Plaintiff and Capital One was the credit card contract (the "Credit Card Contract") which was closed by Defendant when Plaintiff filed for bankruptcy relief.  CreditWise is simply a tradename for Capital One and the credit monitoring services it allegedly provided resulted from a modification of the original Credit Card Contract, such modification unilaterally offered by Capital One for its benefit rather than the Plaintiff's.  Defendant was already authorized to pull Plaintiff's credit report by permission when she applied for credit and then when there was a business relationship between the parties, so Plaintiff paid nothing when Defendant sent her email alerts about her credit score.  A new CreditWise contract would have required new consideration, but there was none and, more fundamentally, Defendant never intended to enter into a new contract

and Plaintiff never asked for Defendant to monitor her credit, so there was no meeting of the minds which is absolutely necessary for a contract to be consummated.

146.    Once Capital One had closed Plaintiff's credit card account, it no longer had the right to access Plaintiff's credit reports with any of the CRAs.  Defendant, however, continued to access Plaintiff's credit reports, mostly under the guise of the illusory CreditWise contract, but no such credit monitoring contract existed.

147.    In the alternative, and without prejudice to anything heretofore pled, if a separate "CreditWise" contract existed, which it did not, it is void or unenforceable because of 1) illegality, 2) unilateral mistake, and/or 3) it was unconscionable.

### 1)    Illegality.

148.    A contract is illegal if the parties either (1) undertake to do an act forbidden by law in the place where the act is to occur or (2) make the contract with an intent to violate foreign law even if the act does not violate the laws of the place where the contract is made.  When Plaintiff filed for bankruptcy relief, the automatic stay went into effect prohibiting Defendant from contacting Plaintiff to collect debt included in the bankruptcy and the automatic stay was later replaced by the discharge injunction imposing similar restraints on Capital One, yet the alleged Capital One CreditWise contract permits, if not requires, Capital One to contact the debtor by email if her credit score changes, which it will as soon as she files bankruptcy.  Thus, the alleged CreditWise contract conflicts with 11 U.S.C. § 362 and 524(a) of the bankruptcy code fundamentally diminishing Plaintiff's *fresh start*, making it illegal and void.  Plaintiff alleges that Defendant not only knew the contract would violate the Bankruptcy Code but intended that result to allow it to avoid the restraints of the automatic stay and discharge injunction.

149.    Should Defendant assert that a separate CreditWise contract exists, it would also be in conflict with the FCRA, 15 U.S.C. § 1681a(c), since Capital One is wearing two conflicting hats

if there is a separate Capital One CreditWise contract, 1) as a creditor subject to the restraints of the bankruptcy automatic stay and discharge, and also subject to the FCRA, but also 2) as a credit monitor providing a service to the recently discharged debtor.  There is a blatant conflict of interest here because it is well-settled law that a creditor cannot obtain a credit report to aide in the collection of a discharged debt and, under the FCRA, there must be the consent of the debtor or a legitimate business purpose before credit reports can be pulled.  So, there is a fatal conflict between the alleged Capital One CreditWise contract and the FCRA because how can a pre-petition consent to Capital One to pull a consumer's credit report survive filing bankruptcy?  The clear answer is it cannot.  If it could, then any creditor could avoid the FCRA simply by offering to share the results of their monitoring of the consumer's credit with the consumer and call it a new "credit monitoring" contract that survives bankruptcy.  Of course, the creditor will deny it is trying to collect the discharged debt and is really trying to help the consumer, but that is a hollow argument.

150.    Unfortunately, this sham has become very popular as more banks, credit card issuers, and others are jumping on the bandwagon and offering all their customers credit monitoring.  Again, Plaintiff alleges that Capital One intended this clever result in its alleged CreditWise contract to allow it to continue pulling a debtor's credit reports after a bankruptcy was filed and even after the debt was discharged.  Clearly, this makes the contract illegal and unenforceable once a bankruptcy is filed due to the fatal conflicts with the bankruptcy code and the FCRA.

**2)    Unilateral mistake.**

151.    A unilateral mistake is a mistaken belief held by only one party, and not shared by the other party to the contract.  In other words, a unilateral mistake occurs when only one party misinterprets the subject matter or meaning of the terms in the contract agreement.  Equitable relief may be granted for a unilateral mistake when the following conditions are met:

(a)    The mistake is of so great a consequence that to enforce the contract as made would be unconscionable. If a new Capital One credit monitoring contract was created, Plaintiff denies she knew anything about it. Never did she think Capital One's emails about her credit score or requests to access her Account to update her personal information, view her statements, or other requests were an offer of a new contract and if they were, which she denies, she did not intend to enter into such a contract.

(b)    The mistake relates to a material feature of the contract. Since Plaintiff did not intend to enter into a new contract with Capital One, if a new contract was created, which Plaintiff denies, it was a material and fundamental mistake as Plaintiff did not think nor did she intend to enter into a new contract.

(c)    The mistake would have been made regardless of exercising ordinary care. There was no mention or reference of a new contract in the emails sent to Plaintiff, nor did she see any indication on the Capital One website that CreditWise was a new contract that would impact her after filing bankruptcy, so no amount of care would have avoided this unilateral mistake. In fact, Plaintiff believes the emails were intentionally drafted to lure her into a new unintended contract to benefit Defendant and avoid the automatic stay, discharge injunction, and the constraints of the FCRA.

(d)    The parties can be returned to the status quo - that is, the rescission will not result in prejudice to the other party except for the loss of its bargain. Defendant will not be harmed by the Court finding that the Capital One CreditWise contract is unenforceable as it was a free service which Defendant admits she could cancel at any time.

**3)    Unconscionability.**

152.    In the event that Defendant asserts that a separate contract related to CreditWise exists, Plaintiff contends that enforcement of the Capital One CreditWise contract would be unconscionable. A contract is unconscionable if it is unfair because of its overall one-sidedness or the gross one-sidedness of one of its terms. The courts have defined an unconscionable contract as "one which no man in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept, on the other." Proof of unconscionability begins with two broad issues: (1) how the parties arrived at the terms in controversy, and (2) whether legitimate commercial reasons justify the terms.

153.    Procedural unconscionability focuses on the parties' assent and the facts surrounding the bargaining process.  Some form of oppression and unfairness must taint the negotiation process leading to the agreement's formation.  Procedural unconscionability may be demonstrated by these factors:

(a)    Clearly, Capital One was in the driver's seat in this relationship, being a large financial institution employing many experts in marketing, legal matters, and consumer finance.  Plaintiff is an unsophisticated consumer with little knowledge of banking or the law.  The disparity could not be greater.

(b)    The presence of deception, overreaching, or other unethical business practices.  No creditor likes the fact that its debt can be extinguished when a consumer files for bankruptcy relief, so not surprisingly, Capital One would try to formulate a plan to mitigate its losses from bankruptcy.  The illusory CreditWise credit monitoring contract nullified the requirements of the FCRA to have a legal purpose before a creditor could pull a consumer's credit report.  There is no reason the CreditWise contract had to be a new contract rather than a modification of the existing contract other than so it would survive the cancellation of the credit card contract when Plaintiff filed bankruptcy.  Being separate from the credit card contract allowed Capital One to contact Plaintiff despite the automatic stay and discharge injunction and allowed them to monitor Plaintiff's credit to pinpoint the appropriate time to offer her new credit without having to follow the dictates of the FCRA and only look at a consumer's credit report when it was prepared to make a firm offer of credit.

154.    The alleged CreditWise contract, if it exists, is unconscionable and the Court should find its provisions void or unenforceable such that Defendant had no right to contact Plaintiff once she filed for bankruptcy relief or access Plaintiff's credit reports post-discharge.

155.    As a result of Defendant's wrongful conduct as described herein, Plaintiff has suffered concrete injuries in fact that are likely to be redressed by a favorable judicial decision, including but not limited to violations of the TDCA, FCRA, the automatic stay and discharge injunction, and intrusion upon seclusion and the disclosure to Defendant of her private information.

-26-

## V.  GROUNDS FOR RELIEF - COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

156.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs, as if fully rewritten here.

157.    Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to:

> a)    Tex. Fin. Code § 392.301(a)(8).  "THREATS OR COERCION.  (a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: ... (8) threatening to take an action prohibited by law."

Because 1) the bankruptcy automatic stay and discharge injunction have force of law and prohibit creditors from attempting to collect debts included or discharged in bankruptcy, *in personam*; and 2) the common law protects Plaintiff from intrusions to her solitude, seclusion, and private affairs, Defendant's actions at issue of constantly sending emails requesting contact and alluding to possible damage to Plaintiff's credit if the debt was not paid and illegally accessing her credit reports post-discharge also violated the TDCA.

> b)    Tex. Fin. Code § 392.304(a)(8).  "FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS.   (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: ... (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."

Defendant misrepresented information to Plaintiff and third parties about the Account through post-discharge account review inquiries on Plaintiff's credit reports, to make it appear that Defendant had a right to analyze the Account and to the CRAs to allow it to conduct pulls of Plaintiff's credit reports so it could to get

information to aid in its efforts to collect the discharged Account. Additionally, Defendant misrepresented to Plaintiff through the emails sent to Plaintiff that the Account, which had been discharged, was open and owing; and these were also misrepresentations of the character, extent or amount of the debt in violation of the TDCA.

> c)    Tex. Fin. Code § 392.304(a)(19). "FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS.    (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: … (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

For the reasons stated in the preceding paragraphs (a - b), Defendant intentionally tried to coerce or deceive Plaintiff into paying the debt, while Defendant knew the Account was part of Plaintiff's bankruptcy or later discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectible from Plaintiff in personam.

158.    Regarding Plaintiff's claim against Defendant under Tex. Fin. Code § 392.304(a)(8), all of Defendant's misrepresentations made to Plaintiff about the character, extent, amount or status of the subject discharged debt were made by design to deceive Plaintiff into believing she was still personally liable for the discharged debt, and did cause Plaintiff to have such belief. Defendant's misrepresentations made to Plaintiff caused and resulted in her thinking differently about the character, extent, amount or status of the subject discharged debt. After she received her bankruptcy discharge, Plaintiff believed she was no longer personally liable for the debt on the Account; however, Defendant's misrepresentations, made her think perhaps her bankruptcy attorney made an error, or there was some issue about which she was unaware, that caused the debt to not be discharged in her Bankruptcy Case and she had to pay it. Defendant's

actions in relentlessly sending Plaintiff emails on the discharged Account and stalking her through her credit reports caused and exacerbated her mental anguish and emotional distress.

159.    Under Tex. Fin. Code Ann. § 392.403, Defendant's actions make it liable for Plaintiff's actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees.  Also, Plaintiff's injuries resulted from Defendant's malice, actual fraud and/or willful and intentional misconduct, entitling Plaintiff to recover punitive damages.

160.    Because of Defendant's conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

## VI.  GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY – INTRUSION ON SECLUSION

161.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs, as if rewritten here.

162.    Defendant intentionally intruded on Plaintiff's *solitude, seclusion and private affairs* when Defendant, during the bankruptcy and after the debt had been discharged, repeatedly sent emails to Plaintiff requesting Plaintiff to contact Defendant and to review information it impermissibly obtained from Plaintiff's credit files with TransUnion and Experian.  Additionally, with regard to the discharged Account and through its CreditWise unit, Defendant repeatedly sought contact with Plaintiff via emails so that it could send her notices of when her monthly billing statements were ready and other alerts related to the discharged Account when it knew such contact was prohibited by the bankruptcy automatic stay and later the discharge injunction.  Such emails even suggested Capital One was sharing Plaintiff's confidential personal and financial information with third parties.  Then, after the debt had been discharged, Defendant made false representations to TransUnion that it had Plaintiff's permission in order to get access to Plaintiff's

private personal and financial information contained in her credit reports. Such actions were intrusions on Plaintiff's solitude, seclusion and private affairs.

163.    These intrusions were of a kind that would be highly offensive to a reasonable person because each involved the violation of federal or state law(s) and were designed to injure Plaintiff both physically and financially. Plaintiff believes that, after time for reasonable discovery, she will be able to show that this information was sought to aide Defendant in its continuing attempts to collect the discharged debt or to circumvent the requirements of the FCRA that require consent or a lawful purpose for accessing a person's credit reports. Also, Plaintiff believes Defendant sought to surreptitiously monitor Plaintiff's finances with the hope that, when the time was right, they could lure her into applying for another lucrative credit card contract. Defendant did in fact send two emails to Plaintiff trying to entice her to see if she was pre-approved for new Capital One credit cards.

164.    These intrusions were a kind highly offensive to a reasonable person since the constant barrage of emails was a constant reminder of Plaintiff's bankruptcy and a rekindling of all the negative emotions associated with her financial troubles and having to file bankruptcy which she was trying to forget; and these illegal intrusions into her private financial information in her credit report was unsettling as Plaintiff had no idea who at Capital One or its affiliates were looking at such information and for what purpose other than to harm or take advantage of her.

165.    At all pertinent times, Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendant during the pendency of her bankruptcy and after the debt was discharged. Plaintiff was entitled to a "fresh start" after going through the bankruptcy process and this was frustrated by Defendant's outrageous disregard for federal and state law. Thus, Defendant's collection emails to Plaintiff and illegal access to Plaintiff's credit reports were intrusions on Plaintiff's solitude, seclusion and private affairs.

166.    Defendant's wrongful acts injured Plaintiff, which resulted in extreme emotional anguish, stress, anxiety, insomnia, loss of time and inconvenience, and fear that she lost control of her credit files and privacy.

167.    Plaintiff's injuries resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VII.  Grounds for Relief - Count III

### Fair Credit Reporting Act (FCRA 15 U.S.C. §1681 *et seq.*)

168.    Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if set forth herein in their entirety.

169.    Plaintiff brings claims against Capital One under the FCRA under 15 U.S.C. §§ 1681n and o, entitling Plaintiff to relief against Capital One for damages and attorney's fees for obtaining and using Plaintiff's consumer report under false pretenses or knowingly without a permissible purpose or negligently violating the requirements imposed by the FCRA, respectively.

170.    Post-discharge, Capital One impermissibly accessed Plaintiff's credit file with TransUnion and obtained and used her consumer reports containing her confidential, personal and financial information with no legally permissible purpose.

171.    The FCRA establishes very specific limits as to when and why an entity can obtain a consumer report:

> (f) Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b (f).

172.    Section 1681b(a)(3) of the FCRA lists the only purposes for which a consumer report can be obtained; it states, in relevant part:

(a) IN GENERAL. – * * * any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(3) To a person which it has reason to believe –

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

***

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information-

* * *

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

173.    Section 1681a(d)(1) defines a "consumer report" as:

(d) CONSUMER REPORT. –

(1) IN GENERAL. – The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of servicing as a fact in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or
(C) any other purpose authorized under section 1681(b) of this title.

15 U.S.C. § 1681a (d)(1).

174.    Capital One furnished false information to TransUnion, misrepresenting it had permission or another legally permissible purpose to conduct an inquiry and review of the Account,

so it could gain access to Plaintiff's protected credit file and impermissibly obtain and use her confidential, personal and financial information in her consumer report(s).

175.    Capital One represented to TransUnion that its alleged permissible purpose for conducting post-discharge reviews of the Account was because Plaintiff had had given Capital One permission to access her reports, which was false.  There was no permissible purpose for Capital One to obtain and use Plaintiff's consumer reports.

176.    At all relevant times, Capital One had actual knowledge that after the discharge being granted, the discharge injunction was in effect, and legally prohibiting Capital One from pursuing any collection against Plaintiff on the Account.

177.    Capital One's impermissible obtaining or using of Plaintiff's private personal and financial information held in her consumer reports from TransUnion, when Capital One had actual knowledge it had no legally permissible purpose to do so, constitutes Capital One's knowing and willful violations of the FCRA under, 15 U.S.C. § 1681n, or alternatively and at a minimum, negligent violations under 15 U.S.C. § 1681o.

178.    Plaintiff believes that, after reasonable discovery, she can prove Capital One obtained and used Plaintiff's consumer report(s), and private, personal and financial information therefrom, illegally to attempt to collect on the discharged Account from Plaintiff personally.

179.    Plaintiff believes that, after reasonable discovery, she can prove Capital One obtained and used Plaintiff's consumer report(s), and private, personal and financial information therefrom, for the illegal purpose of attempting to collect on the discharged Account from Plaintiff personally or to evaluate Plaintiff's current financial situation for potential offers of new credit without having to formally offer such new credit.

180.    Plaintiff believes that, after reasonable discovery, she can prove Capital One is unwilling or unable to prevent its system(s) or agents, from requesting and obtaining Plaintiff's

consumer report(s) without a permissible purpose to do so, subjecting Plaintiff to having her private, personal and financial information disclosed to Capital One without her consent, authorization or other legal justification.

181.    As a direct and proximate result of Capital One's conduct, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress, entitling Plaintiff to an award of actual and statutory damages in an amount to be proved at trial, plus attorneys' fees, together with the costs of this action, under 15 U.S.C. §§ 1681n or o.

182.    The injuries suffered by Plaintiff because of Capital One's impermissibly obtaining and use of Plaintiff's consumer report(s) post-discharge were attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to punitive damages under 15 U.S.C. § 1681n(a)(2).  Because Capital One's impermissible acquisition and use of Plaintiff's consumer report(s) will have a continuing adverse impact on Plaintiff, and because the violations may be ongoing, Capital One is liable for any future harm suffered by Plaintiff because of Capital One's actionable conduct.

183.    After being afforded a reasonable time to conduct discovery, Plaintiff believes she can show that, at all relevant times, Capital One knew, and continues to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer collectible from discharged debtors, but Capital One has made a corporate decision to willfully and maliciously act contrary to this knowledge in its calculated decision to violate its duty and requirement to furnish accurate information to the CRAs, by furnishing to the CRAs false information of a purported permissible purpose to access the credit files of and obtain confidential personal and credit information and consumer reports for discharged consumers, alleging accounts with discharged debt are open and collectible or that consumers with discharged debt Capital One is servicing have

applied for new credit, when she had not, all to further Capital One's illegal *in personam* collection attempts on discharged debt.

## VIII.  GROUNDS FOR RELIEF – COUNT IV

### VIOLATION OF THE AUTOMATIC STAY

184.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs, as if fully rewritten here.

185.    At all material times, Defendant had actual knowledge of Plaintiff's Bankruptcy Case and of the automatic stay prohibiting any attempt to collect on the Account.

186.    Defendant attempted to collect from Plaintiff personally on the Account or to get Plaintiff to take actions to benefit Defendant, as evidenced by Defendant's collection emails to Plaintiff during her Bankruptcy Case.

187.    Defendant violated the part of the Bankruptcy Court's automatic stay pertaining to 11 U.S.C. § 362(a)(1) which "operates as a stay, applicable to all entities, of - the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;…" regarding all of Defendant's prohibited harassing and collection actions it took at issue during the pendency of the Bankruptcy Case by sending the emails at issue to Plaintiff, when Defendant had actual knowledge about Plaintiff's Bankruptcy Case and the automatic stay, which went into effect when the Bankruptcy Case was filed and prohibited all creditors and debt collectors from contacting Plaintiff to further *in personam* collections against Plaintiff of pre-petition debt during the pendency of the Bankruptcy Case.

188.    Notwithstanding Defendant's knowledge of Plaintiff's Bankruptcy Case, Defendant failed to cease its *in personam* debt collection activity on the Account and debt at issue when it became aware Plaintiff filed for bankruptcy protection and while her case was active and pending, as evidenced by Defendant's collection activity during Plaintiff's Bankruptcy Case.

189.    Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiff.  After this prima facie showing by Plaintiff, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on her claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

190.    There are no exceptions under 11 U.S.C. § 362, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the automatic stay.

191.    The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

192.    Also, no requirement of mitigation on the part of Plaintiff is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiff with an obligation to police the misconduct of Defendant would be a complete derogation of the law.

It is well-settled that each party to an injunction or order of the Court ensures its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendant to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.  Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant.  No defense of failure to mitigate should be allowed.

193.    Plaintiff has been injured and damaged by Defendant's actions, and Plaintiff may recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 362 and under the Court's powers under 11 U.S.C. § 105.

## IX.  GROUNDS FOR RELIEF – COUNT V

### VIOLATION OF THE DISCHARGE INJUNCTION

194.    Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if set forth herein in their entirety.

195.    At all material times, Defendant had actual knowledge of Plaintiff's Bankruptcy Case and of the discharge of the debt on the Account.

196.    Defendant attempted to collect from Plaintiff personally on the discharged debt or coerce Plaintiff into actions benefiting Defendant, as evidenced by Defendant's unwanted credit monitoring, illegal access of Plaintiff's credit reports and a relentless email campaign related to CreditWise and demands for contact and payment on the discharged Account when she was protected by the discharge injunction.  The information in Plaintiff's credit reports provided valuable information to Defendant to aide it in collecting the discharged debt or evaluating

Plaintiff's current financial situation for future offers of credit without having to comply with provisions of the FCRA designed to protect consumers from illegal access to their credit reports.

197.    Defendant's actions were willful acts to further its efforts to collect the discharged debt from Plaintiff, in violation of the discharge injunction imposed by 11 U.S.C. § 524(a). Further, Defendant's acts were harassing and attempts to coerce and deceive Plaintiff to pay the discharged debt.  Defendant's failure to comply with the aforesaid laws, despite Defendant's being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of Plaintiff's discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

198.    The actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiff, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

199.    Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiff.  After this prima facie showing by Plaintiff, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on her claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

200.    Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order issued under 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived ...”

201.    There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the automatic stay and discharge injunction.

202.    The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

203.    Also, no requirement of mitigation on the part of Plaintiff is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiff with an obligation to police the misconduct of Defendant would be a complete derogation of the law. It is well-settled that each party to an injunction or order of the Court ensures its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendant to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.   Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant.  No defense of failure to mitigate should be allowed.

204.    Plaintiff has been injured and damaged by Defendant's actions, and Plaintiff may recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of violations of the discharge injunction of 11 U.S.C. § 524 and under the Court's powers under 11 U.S.C. § 105.

## X. *RESPONDEAT SUPERIOR* AND VICARIOUS LIABILITY

205.    After a reasonable time to conduct discovery, Plaintiff believes she can show that all actions taken by employees, agents, servants, or representatives of any type of and for Defendant were done in the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all actions under a theory of *respondeat superior* and/or vicarious liability.

## XI. DAMAGES

206.    Besides any damages stated hereinabove, the conduct of Defendant has proximately caused Plaintiff monetary loss, in part, with regard to actions she had to take investigating her claims at bar and expenses related thereto and in bringing this lawsuit.  Defendant's actions also caused Plaintiff past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state, stress, anxiety, insomnia, and other damages, evidence for all of which will be presented to the jury.  Dealing with the consequences of Defendant's actions has cost Plaintiff time and mental energy, which are precious to her.  Because Defendant's harassment was continuous and it failed to stop after Plaintiff's cease and desist request, Plaintiff was concerned that something had gone wrong with the bankruptcy and were concerned that the debt was somehow not discharged.

207.    The actions of Defendant at issue brought back negative emotions and anguish of having to file and go through bankruptcy and caused Plaintiff new fears, stress and mental anguish. A feeling of extreme worry, fear and anxiety overtook Plaintiff and increased with each contact from Defendant.  Plaintiff feels as though she has lost control of who has access to her credit files and privacy because Capital One keeps accessing her credit files whenever it chooses. Additionally, Plaintiff believes Defendant is illegally sharing that information with third-parties without her permission based on some of the emails described above.  Because Defendant's

harassment was continuous and they were sending emails about the discharged Account, sending continuous emails about her credit reports, performing account reviews related to the discharged Account, and illegally accessing her TransUnion credit reports under the guise of credit monitoring that should have stopped when the bankruptcy was filed, Plaintiff was concerned that something had gone wrong with the bankruptcy and that the Capital One debt was somehow not discharged.

208.    Plaintiff believes that, after reasonable discovery, she can show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff, actually knowing that such actions violated the law.

209.    Plaintiff believes that, after reasonable discovery, she can show that Defendant's actions are an integral part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts included in the debtors' bankruptcy case.

210.    Plaintiff believes that, after reasonable discovery, she can show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws Defendant is well aware.

211.    Plaintiff believes that, after reasonable discovery, she can show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, under its established policies and procedures, regarding knowingly, willfully, intentionally, and maliciously attempting to collect on debts in bankruptcy.  Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant.  Moreover, Plaintiff's injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

212.    Due to Defendant's conduct, Plaintiff was forced to hire counsel, and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Francinette Baptiste prays the Court:

A.    Enter judgment for Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the TDCA, invasion of privacy, the FCRA and violations of the automatic stay and discharge injunction,

B.    Find that circumstances exist for an award of punitive damages to Plaintiff,

C.    Award Plaintiff pre-judgment and post-judgment interest as allowed by law, and

D.    Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,

*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

November 10, 2021                 */s/ James J. Manchee*
Date                                          James J. Manchee